IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHARLES PERRY,**

       **Petitioner,**

**v.**                                   **Civil Action No. 1:07cv170**

**JOE DRIVER, Warden**

       **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

The *pro se* petitioner initiated this case on December 11, 2007, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 in which he seeks an order directing the Bureau of Prison ("BOP") to immediately transfer him to a Community Corrections Center ("CCC"). The petitioner paid the required filing fee on January 22, 2008.

On January 29, 2008, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time. Consequently, the respondent was directed to file an answer to the petition and did so February 28, 2008, by filing a Motion to Dismiss. The Court issued a Rosoboro Notice on March 4, 2008, and the petitioner filed a response to the respondent's motion on April 3, 2008. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.09, et seq.

**I.**       **Factual and Procedural History**

The petitioner was convicted in the United District Court of the Southern District of West Virginia and sentenced to a forty-eight month term of incarceration. See Memorandum (dckt. 15)

p.1. At the time of this petition's filing, the petitioner was designated to serve his sentence at FCI Hazelton. However, as of February 20, 2008, the petitioner was transferred and placed in 'holdover status" at a Federal Transfer Center in Oklahoma City, Oklahoma, in order be part of the BOP's Residential Drug Abuse Program.

In his petition, the petitioner asserts that the BOP's regulations (28 C.F.R.§§ 570.20 and 570.21), which restrict the time inmates serve in a halfway house, are unlawful. Therefore, he seeks transfer from FCI Hazelton into a CCC placement facility.

## II.     Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Departm ent of Justice issued a memorandum stating that this practice was inconsistent with 18 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmates's sentence. Section 3624(c) provides as follows:

> The Bureau of Prison shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits,

as well as many other district courts,[1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
> (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created a new regulation in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release

---

[1] See Goldings v Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato v. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003)(collecting cases).

3

phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21 (Emphasis added). It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## III.    Analysis

### A.    Petitioner's Contentions

Petitioner asserts that the BOP's regulations (28 C.F.R. §§ 570.20 and 570.21), which restrict the time inmates serve in a halfway house, are unlawful. Petitioner contends that the regulations are a "categorical exercise of discretion for designating or transferring inmates to a halfway house." See Petition (dckt. 1) p. 4. Petitioner reasons that 18 U.S.C. § 3621(c) requires the BOP to consider certain factors before determining a prisoner's placement or potential transfer, and any regulation in conflict with the aforementioned statute must be unlawful. Additionally, petitioner contends that the BOP and the Attorney General erroneously added points to his security level for not having his high school diploma, resulting in unlawful U.S.P. placement. Therefore, petitioner seeks his immediate release to a CCC facility.

### B.    Government's Contentions

In its motion to dismiss, the Government contends that the petitioner's claims are not ripe for review. The Government asserts that the petitioner has not yet been evaluated for a CCC

eligibility, nor is he even close to being eligible for CCC placement. Additionally, the Government asserts that because the defendant has been transferred, Hazelton is no longer responsible for making any determinations regarding the petitioner's CCC eligibility, referral or release. Furthermore, the Government asserts that the petitioner has not filed any administrative remedies with respect to his alleged CCC complaints nor any other potential BOP problem. Therefore, the petitioner has not exhausted all of his administrative remedies. Hence, the Government argues that the petition should be dismissed because there is no live case or controversy remaining.

C. **Plaintiff's Response**

In his response to the respondent's motion to dismiss, the petitioner reasserts his claims from his petition. Additionally, petitioner argues that despite not exhausting his administrative remedies, he is entitled to review by this Court because any attempt to exhaust his claim would be futile. Finally, petitioner argues that any transfer to a CCC facility would help increase the likelihood of a successful transfer to the outside world and continue his rehabilitation.

D. **Pertinent Caselaw**

The Third Circuit Court of Appeals was the first court of appeals to address the issue raised in the instant case. In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. See Woodall at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. Id. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center

5

("CCC"), do not allow the BOP to consider these factors in full." Id. at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Id. at 244; see also Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006).

Relying on the clear weight of authority, this District has likewise concluded that the challenged regulations are invalid. See Smith v. Gutierrez, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); Simcoke v. Phillips, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); Jaworski v. Gutierrez, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); Murdock v. Gutierrez, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court directing that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Id. Thus, the invalidation of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

### E. Ripeness

6

The Supreme Court has recognized that "[t]he ripeness doctrine 'is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Metzenbaum v. Fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289-1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967) (overruled on other grounds).

In this case, the petitioner is anticipating that the BOP will apply 28 C.F.R. § 570.21 in a manner so as to limit his eligibility for placement in a CCC to the last 10% of his sentence. Because at least four Courts of Appeals have found that the BOP regulation limiting a prisoner's placement in a CCC to the lessor of ten percent or six months of his sentence was an improper exercise of the BOP's rule making authority, the petitioner seeks a preemptive ruling requiring the BOP to place him in a CCC for the last six months of his sentence.[2]

Relying on the clear weight of authority, this District has likewise concluded that the

---

[2] The Fourth Circuit Court of Appeals has not yet ruled on the legality of 28 C.F.R. § 570.21. However, the Tenth, Second, Eighth and Third Circuits have ruled the same improper. See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.2d 71 (2nd Cir. 2006); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).

7

challenged regulations are invalid. See Smith v. Gutierrez, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); Simcoke v. Phillips, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); Jaworski v. Gutierrez, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); Murdock v. Gutierrez, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court directing that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Id. Thus, the invalidation of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

These decisions, however, do not apply to this petitioner because he is not yet near the end of his sentence term. While Congress has mandated CCC placement for federal prisoners, at best, that placement is not required until the last six months of incarceration.[3] However, in order to facilitate that placement, under P.S. 7310.04, the BOP considers an inmate for CCC placement when he or she is within eleven to thirteen months of his or her projected release date.[4] Based upon the record now before the Court, the petitioner's Unit Team has made no official recommendation about the length of his CCC placement. Instead, the petitioner was merely given a preliminary or projected date for CCC placement during his initial classification upon his arrival

---

[3] The statutory mandate for placement of an inmate in pre-release custody is set forth in 18 U.S.C. § 3624(c). Under this provision, petitioner may receive up to a six month stay in a CCC.

[4] In the present case, petitioner's release date is scheduled for December 30, 2009.

8

at FCI-Hazelton. Nevertheless, the petitioner has not even been deemed eligible for CCC placement yet. Depending on the circumstances, the petitioner's claim only becomes ripe when his Unit Team assesses his eligibility for CCC placement and completes an official CCC referral form.

If the petitioner's Unit Team recommends CCC placement for the last six months of his term of incarceration, then he will have received the maximum benefit for which 18 U.S.C. § 3621(c) provides, and he will have no need of this Court's intervention. Moreover, considering the recent decisions of this district, and a change in BOP policy, it is unlikely that the petitioner's Unit Team will even rely on 28 C.F.R. § 570.20-21 and recommend a categorical placement in a CCC facility. Rather, it is more likely that the petitioner's Unit Team will review his eligibility for CCC placement based on the five factors set forth in 18 U.S.C. § 3621(c), and the petitioner will then have no need for this Court's intervention.[5]

## IV. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (dckt. 15) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **DISMISSED without prejudice.**

---

[5] Regarding the petitioner's transfer, the undersigned notes that if the petitioner is eventually transferred back to a facility in this jurisdiction, then the five factors enumerated in 18 U.S.C. § 3621(b) and not the 10% limitation found in 28 C.F.R. §§ 570.20 and 570.21, will be used in the CCC review at the appropriate time. If a non-RDAP CCC review is eventually conducted at a facility in another district then it is possible that the 10% policy could be utilized. However, if this occurs, petitioner must seek redress through a 2241 action in the district where he is located at that time. This Court has no way to know where petitioner may be incarcerated when CCC review will become ripe. Since the matter is not ripe now and petitioner has been transferred from the jurisdiction of this court, dismissal and not transfer of the claim is the appropriate remedy.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of the Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 3, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE